I am. Good morning, Your Honor and the panel. My name is Philip Paul Weidner. I'm here on behalf of KY. She's present here in the courtroom. She's the minor victim in the case. Mr. Koh is here on behalf of her brother WN and also on behalf of her parents, Shannon Nelson and Jay Nelson. But you're going to be arguing for the entire time. Did you want to reserve any time for rebuttal? I'd like to keep five minutes if I could. All right. You may proceed. May it please the Court. KY is paraplegic because she was accidentally shot by her brother WN with a Smith & Wesson firearm that should have been childproof. Smith & Wesson has known since 1884 the necessity of having a weapon such as this being childproof with a safety lock. We pleaded a cause of action that was ironclad in state court and we were moved to federal court. Counsel, help me a little with the pleading. It's kind of long. I'm looking at the second amended complaint because even though your motion for leave to amend wasn't granted, it was plain that the judge looked at it and considered what you had. Yes. The way I understand it, it pleads two things, and I want you to correct me if I'm wrong. It pleads that the gun was defective because no trigger lock or safety lock was furnished either with it or subsequently to owners of it, or second, that the gun may have fired without the trigger being pulled at all. Do I understand it right? Basically, yes. The first aspect has got some sub-parts, but basically, yes. Yes, it does. I'll get to those. All right. Okay, on the second part, I don't think you ever pleaded that the gun did fire. I remember there were a whole bunch of Sturm Ruger cases a few years ago where they did fire without the trigger being pulled. They were dropped on a rock, and if they hit a rock just so, they'd fire. But the Smith & Wessons, I think, always had that transfer bar that prevented that. Right. So it looked like you weren't pleading that it fired without the trigger being pulled. You were just leaving it open as a possibility when you say may have. Here's our situation, Your Honor. I know Your Honor is referring, of course, to the Bix Whiting cases and the Sturm Ruger. Day versus Sturm Ruger. Exactly, right. Your Honor, as to that aspect of it, based upon our attorney-client interview with the boy who was at a remote site trying to protect his sister from bears when the parents were off making a legal call from the father who was working up in Delta Junction. He went and loaded the gun, and the gun went off accidentally. He doesn't think he hit the trigger or pulled the trigger. So that was the basis for pleading that. But the focus of the suit and the focus of what's before you, Your Honor, just that pleading alone is sufficient to state a cause of action. Well, but under Twombly and Iqbal, I think you've got a problem there. You have no facts. I mean, there are no facts alleging that this went off without the trigger being pulled. And I think that's exactly what, on the second part of it, what Twombly and Iqbal go to. And obviously, you know, I mean, this is clearly a very tragic situation, but I think Twombly and Iqbal, there's certainly a strong argument to be made under your second alternative theory that there would have to be some facts alleged and some specificity, easy for me to say. Well, all right, Twombly and Iqbal, as of course we all know, were on federal causes of action. The Supreme Court has said that they still apply under Rule 8, but I think it's the Stevens dissent in Twombly that says that Rule 8 is a rule of inclusion and not exclusion. Those two causes of action, the antitrust cause of action in Twombly was very fact-specific. The Bivens action in Iqbal was very fact-specific. We pled causes of action under state law and came into federal court, and those causes of action under state law, when you look at Beck v. Caterpillar in those cases, they are sufficient, I submit, if you plead, that it may well have discharged without the trigger. So you would be standing on the theory, even if you were allowed to go to court, that you don't have to say any more than you've alleged right now? Well, actually what I would do is this. We basically got thrown out on summary judgment, even though it wasn't a summary judgment motion. But what we would do is we'd have an examination of the firearm. We would try and show mechanically why it actually discharged without pulling the trigger based on what the boy told us. But the comments that your honors have made, I think, illustrate why, on the safety law cause of action, absolutely the case should not have been dismissed. And I'd like to address that if I could. Well, I guess, does Alaska Statute 9.65.155 preclude you from bringing any of your claims? Absolutely not. I'll wait to get back there, because that's how we pick up your voice. Absolutely not. I'm glad that the court brought that question into play. The statute, your honor, the legislative history of the statute, on May 12, 1999, in the Senate Judiciary, they made it quite clear, Senator Kelly, this is simply a statute that goes to these suits that were being filed by the cities against gun companies who were New York, of that nature, who were suing gun companies. It says, it was drafted in response to lawsuits filed against gun manufacturers by municipalities across the country. These suits claim gun manufacturers conspired to flood markets outside strictly regulated cities with firearms with the knowledge these guns would reach the cities and be sold and used illegally. I'm reading from the Senate Bill 77, May 12, 1999, history. There's a long history there, and the statute says specifically, it says, this section does not prohibit a civil action resulting from a negligent design, a manufacturing defect, a breach of contract, or a breach of warranty. It says it right there in the statute. And Caterpillar v. Beck, on the use, the utility risk analysis, identifies five factors, which we clearly can make in this case in terms of why this design is negligent. The case is subsequent to Beck, and it seems to me that you have a problem. It looks to me like your only provision that you can go under is negligent design. It could be a negligent design to furnish a gun without a safety lock if reasonable care by the manufacturer would include a safety lock. You've got a subsequent authority to Beck that says you have to look at the manufacturer at the time it left the manufacturer's hands, which is 72. You haven't pleaded that anyone else furnished child safety locks or otherwise established that it was negligent design in 1972. In fact, I think it's still pretty controversial whether it's negligent design or not. These child safety locks are a controversial thing. They've been required by statute of regulation in some places. Actually, Congress has passed one. There's a Harvard Law Review article that refers to that, 119 Harvard Law Review 1939. Then you don't have to ask whether the exercise of reasonable care, Congress can require you to do something stupid if it wants to, as long as it's not unconstitutional. But, Your Honor, to respond to your question, the Alaska Supreme Court law about state of the art, actually state of the art is not even a defense in Alaska. Well, so what is your best authority to show that Alaska would recognize a duty to put a safety lock on a gun issued in 1972? What's your best authority? Well, I think it's California v. Beck. But if I could just respond more briefly to Judge Kleinfeld. The Kawasaki case, which is the Alaska case about the product has to be defective when it leaves the manufacturer, that's an actual manufacturing defect itself. That had to do with some cracks in a snow machine seat or something of that nature. But when the state of the art, and the state of the art is not even a defense in Alaska, but we can show that the state of the art was such. We've got patents going. There's a lemon squeezer patent by Smith & Wesson that goes back to 1884 on child-proof firearms. And we can show under the Beck criteria, and the Beck criteria, if I can, give me just a moment here. You analyze, this is California Caterpillar Tractor v. Beck. The gravity of the danger posed by the challenge of design, the likelihood the danger would occur, the adverse consequences of the product and the user to result from alternative design, the mechanical feasibility of a safer alternative, and the financial cost of improved design. We win on all five grounds. The gravity of the danger, people have known for years, these manufacturers have known for years, Smith & Wesson, actually before this accident, I believe in the Clinton administration, supported that bill for safety locks. If you go down the street, Your Honor, right now to Great Northern Guns and buy a Smith & Wesson, they've got a key lock on those guns. It's not just to lock the safety, they lock the hammer. I don't think there is a safety on a revolver, is there? Yes, there is. Yes, there is, Your Honor. Do revolvers have safeties? Semi-automatics have safeties. Oh, no, no. There's a safety lock on a revolver. A safety lock is different than a safety. Precisely. Let me slow down. I happen to like firearms, but we should have safe firearms. And here's the way it works, and I happen to know Smith & Wessons. A revolver, the cylinder revolves. You pull the hammer back, it revolves. You pull the trigger, the firing pin hits the bullet and ignites the primer and the bullet goes down the barrel. There's no safety per se, but there's a safety lock on these new Smith & Wessons. That lock is a little key. When you turn that key, you can't move that hammer. You can't move the trigger. That hammer can't hit the firing pin and it cannot discharge. And they exist as we speak. If we went down over on Tudor Road to Great Northern Guns and bought a Smith & Wesson... They didn't in 1972. The technology existed. They knew about it. Could have been done. Could have been done. It wasn't by anyone. And that goes to the Beck criteria, which is the gravity of the danger posed. It's just like saying that a child-proof capsule in poison should have been done at a certain time. You're down to four minutes. Do you want to reserve that for rebuttal? I do. All right. Thank you. Good morning. Good morning. May it please the Court, my name is Louis Long, and I represent the Smith & Wesson parties in this appeal. I wanted to ask you about the statute. Does Alaska Statute 09.65.155 preclude the Nelsons from bringing any of their claims? And if so, which ones? I think that the statute, fairly read, bars all of the claims except perhaps the negligent design claim, if the negligent design claim is properly pled. When you parse down the complaint, and I realize that that may be a difficult chore, and when I say complaint I'm really referring to the first amended complaint, which is the operative pleading before the Court. Why isn't the operative pleading if an amended complaint should have been allowed? With all due respect, Your Honor, no, I disagree with you on that point because the second amended complaint was not presented to the court, to the district court, until after the dismissal already occurred, number one, and number two, after the district court had already denied a motion for reconsideration. So the second amended complaint was essentially strike three. The plaintiffs obtained leave of court and did file a first amended complaint. That was the pleading that the district court dismissed, the first amended complaint. After the first amended complaint was dismissed, what did the plaintiffs do? The plaintiffs filed a motion for reconsideration seeking to reinstate the first amended complaint. That was denied. They filed a motion for leave to amend to plead the second amended complaint post-dismissal, and that was denied. So I submit that the second amended complaint isn't properly before the court, but even if it is, focusing to the statute, even if the second amended complaint were the one that this court wishes to consider, the causes of action pled therein are the same as the causes of action that were pled in the first amended complaint. Those claims were negligent design, strict liability, design defect, strict liability, manufacturing defect, and I'll circle back to that point in a little bit if I may, and failure to warn, failure to recall or retrofit. And when you look at the statute and apply the statute to the cause of action, the manufacturing defect claim could possibly fall within the statute along with the negligent design claim. Strict liability is clearly, strict liability, design defect is clearly. I think the statute really does narrow it down a great deal. I agree, Your Honor. Negligent design is a possible route to liability. That is correct. Now, when we were in law school, our professors used to just love those tort cases that said something was negligent when no one in the world had ever done it. Gee, it's been a while now since I was in law school, but as I recall, there was an Indian towing, I think it was, where nobody has a radio in their tugboat or towboat, and Learned Hand said, well, they should have, because when you consider the availability of the technology and the risks, if it isn't used, they should have. And we used to get just a flood of those kind of cases in law school where something could have been done and the court says it should have been done even though nobody was doing it at the time. Whether a jury would buy that is another question, but whether it's permissible to put it to a jury is the question before us. Why isn't there an adequate pleading of negligent design? Because it would have been possible to furnish a child safety lock with a gun even though nobody was doing it in 72. I think the reason, the response to that question, Your Honor, is that there is no allegation in the pleading that anyone would, let me back up. I already stipulated with you, nobody was doing it. I'm trying to remember back from my final exam in first year of tort, so I may not have this exactly right, but as I recall, there was a line of tort cases where nobody was doing it, but the court still said it was negligent design. Well, I think the problem that we both may be... Or it could be negligent design if the jury bought it. I think the problem that we may both be laboring under is once you start talking about negligent design, I think you're almost talking inherently about questions of fact, and the only allegations in this complaint about the design of the gun were, number one, that the gun lacked some kind of locking device, and number two, their allegation that it was state-of-the-art. And the only evidence of state-of-the-art that they offered were the existence of patents. They show it was technologically feasible. It was technologically feasible, but just because... I'm sorry, Your Honor. Kind of like those lawnmower cases. But just because it may be technologically feasible doesn't mean that it was unreasonable not to include a safety lock. And so I think that's where the breakdown may occur in terms of the allegations of the plaintiff's complaint of negligent design, because there is no allegation that the manufacturer acted unreasonably in failing to include the safety lock device. And, of course, the manufacturer in its defense, and we haven't gotten to that point yet, the manufacturer may well have scores of reasons why it chose not to include this technologically feasible alternative. Based on the pleading, so we don't get to that. That's correct. On his alternative theory of that regardless of the lack of safety lock, the gun was defective because it fired without the trigger being pulled, I asked appellant about Twombly and Iqbal. Why shouldn't they be allowed to amend their complaint to allege more specific facts? Why is that not, you know, why shouldn't they? It is at the pleading stage. Because at the present stage, they've already had two cracks at pleading that fact. We're not talking about an independent witness here. We're talking about someone that is within the family's control. And they have means and access to talk to that individual and do their investigation prior to filing their complaint, and if there was some factual basis for them to make that allegation, they could have done that in either the original complaint filed in state court, the first amended complaint filed in federal court. We've got a Rule 11 problem. If the kid says, I don't think I pulled the trigger, but it's a little kid, not that reliable, and they don't have the gun, until they can inspect the gun and see if it's possible that the child is right, I'm guessing that they'd be trying to dodge Rule 11 problems by saying may have rather than did. Well, the gun is in the possession of the Alaska State Police, to the last of our knowledge, and there's no reason why they couldn't have gone to the Alaska State Police and asked for permission to inspect the gun. The gun's not being, it's not unavailable to them. The gun is available to them. So they certainly could have. I'm not sure that it's available to them. They've asked to have it to inspect, and that motion has been denied. Is that right? There was a motion that was denied, Your Honor, but I believe you may be mistaken as to the gist of the relief that that motion was seeking. The allegation of the motion was that an inspection occurred outside of their presence. They attribute that inspection to the defendants. They now want the results of the purported defendant's examination of the gun. It was not a request on their part to conduct their own investigation, which was denied to them, Your Honor. So how did you do the examination? You made a request and got the gun from the police? Assuming that it was our investigation, yes, that's what happened, Your Honor. A request was made at the State Police, and it was done at the State Police. Okay, but so it's gone all this time, and there's never been any factual allegation or, to your knowledge, let's say if they were to say, if it included facts that saying a child said that they dropped the gun and it accidentally shot the other child, would that be enough to get passed at the pleading stage? If the allegation were that the gun was dropped and accidentally discharged, I believe it would, but that's not what the allegations are in the complaint. There is no allegation that the gun was dropped, as happened in the Day case. So is it sort of basically your position that they've had an opportunity to do that, they've had an opportunity to ask someone about it, and the reason that it hasn't been done is that no one would say that? Is that why it would be futile? That's the only thing I can infer from the record. The means of access to the facts to support the complaint to meet the Rule 11 obligation were within the plaintiff's control. The plaintiffs made choices about what facts they were going to plead and what facts they weren't going to plead, and I can't go inside their head and try to determine why it was that they didn't plead certain facts. So after the First Amendment complaint was dismissed, then by looking at the Second Amendment complaint, is your argument that it supports that they can't allege that because they already knew it got dismissed and then they still didn't allege facts with specificity? Yes, Your Honor. The only facts that they really amplified to my reading of the Second Amendment complaint were facts relating to the existence of the technologically feasible or arguably technologically feasible safety lock devices. They didn't change, to my reading of the Second Amendment complaint, any other core facts of the case. They were concentrating on that issue. And I had mentioned I wanted to circle back to the issue of manufacturing defect because that is one of the exceptions that's recognized in the Alaska statute. And this complaint does contain, magic words, manufacturing defect, but there is no fact plead regarding the existence of any such defect in the gun. So all we have is a conclusory allegation of a manufacturing defect without any allegation of a specific instance in which the gun deviated from the intended design of the manufacturer, which I believe is necessary in order to have a manufacturing defect claim. So that's why, even though that claim is recognized in the statute, I believe that the complaint is not adequately pled in that regard. Counsel, how has the Alaska Supreme Court approached cases alleging negligent design in circumstances where no manufacturer supplying that product was designing it in the way that the plaintiff claimed it should have, but it would have been possible to design it to avoid the defect? I don't know the answer to that question, Your Honor. It's sometimes called state-of-the-art defense, so you can argue that it's a little different? You don't know whether Alaska says that there is or is not a defense where nobody else was manufacturing it that way? Well, we do know in strict liability cases they are restrictive on admitting... No strict liability under this statute. I think that certainly... It has to be negligent design. I think, as in any negligence case, evidence that what other people in the field were doing would be admissible to answer the question of whether or not the conduct was reasonable. It doesn't go to dismissal on the pleadings. On the pleadings, it does matter whether the Alaska Supreme Court would think a case could go to a jury where it was shown that a design could have avoided a harm, nobody was designing the product that way, it was technologically feasible although nobody was doing it. Those cases come up all the time with snowblowers and lawnmowers and all kinds of things other than guns, and I just can't remember whether the Alaska Supreme Court has any cases on it. If I may, Your Honor, I'd like the opportunity perhaps to do a little research and submit a supplemental memorandum on that point if it's a matter of concern to the panel. The panel would let you know if it cared to entertain that. Thank you. I believe that the pleadings as they currently exist don't satisfy Twombly-Iqbal standards. If the court has to reach that issue in the case, I see that my time is rapidly counting down here. If the court has any additional questions for me to answer, I would be happy to do that. Again, I would reiterate if the court wishes to have supplemental briefing on the issue of negligences articulated by Judge Kleinfeld, I would welcome the opportunity to do that. Thank you. Thank you for your argument. Justice Kleinfeld, I've been frantically looking through my papers here. I can't find the case. There's an Alaska case that says the state of the art is not a defense, and I can give you a written submission on that. I'm sorry, but I can't find it here right now, but that's what they say. We actually plead state of the art. State of the art, there's two aspects of state of the art, technologically feasible and then what other people are doing. Is that an Alaska Supreme Court case? Yes, and I'm sorry, I've been looking for it here. I read it last night, and I'll give you a slide on it. It says the state of the art is not a defense. The issue becomes technologically feasible, and it's obviously technologically feasible. They're doing it right now, and they could have done it then. It's a simple fix. And this question that the court posed about this statute. But doesn't yours also have another component of requiring a retrofit? We're not talking about the state of the art of something they're selling now as opposed to something, I mean, I guess that was, it wasn't state of the art in 1972. Actually, in 1884 they could have done it. Well, no, they could have done it. It's not the same as state of the art. State of the art is two different things. It's what could they have done technologically, that's state of the art, and then what were the other people actually doing. And to answer your question, in 1972 the technology existed that they should have done it. And the Alaska Supreme Court has said the state of the art in that context is not a defense. Now, in terms of your retrofit question, our position is that they should have done it in 72, and then after 72 they should have advertised devices, locks, to prevent this from happening. And actually Congress passed this Child Safety Lock Act of 2005, which is similar to the Alaska statute you asked about, and it's addressed in the 119 Harvard Law Review in 1939, requires them when they sell these guns to have safety locks. They either have to be internal in the gun or they have, there's cables, there's trigger locks, there's all kinds of devices that they sell. I thought most of them were things where you just put it between the back of the trigger and the trigger guard and it stays in there unless you unlock it with a key and pull it out. Yes. Is that what we're talking about? Most of the ones that come out now, yes. But the Smith & Wesson new pistols have an integral key that just, you turn it and it locks the hammer and you can't fire. He knows that. That's the way they're sold. But Congress passed the Child Safety Lock Act of 2005. In essence what the judge did to us, he made a policy decision that this is not a good policy to require these kinds of safety lock devices. I'm concerned about the fact that you filed this case, I think, June 8, 2009, and that the incident occurred June 6, 2007, and there's never been anywhere in a complaint, you know, you're asking the court to say that it's enough to say that the gun could have gone off without the trigger being pulled, and there's never been any facts to that effect. And what Apelli is stating is you do have access to the interview of the person of the incident. May I address that? They're your clients, yes. May I address that? Judge Kline feels right. When a small boy tells me that the gun went off without hitting the trigger, I want to see some physical evidence before I say definitely it happened because of Rule 11. We pled that. Then what happened was this, and this has to do with inspection. The state police had the gun. We were waiting to do a, because in these products cases, all the products cases I do, everybody shows up and you inspect the weapon. They went without our notice and inspected the gun. And then the case got dismissed so I can't get an order to go do a mutual inspection. So we've never, I don't go inspect guns without the other parties being there. They did. So that's why we haven't inspected the gun. So we pled May because the boy tells us it went off without pulling the trigger. That's the answer. And if we can get back down and get some justice here and get an inspection, we think we can prove that it went off without pulling the trigger. And in addition, we have the safety lock issue. All right. Well, you've gone over your time unless any of the panel members have a question. Could I have one minute, please? One minute. You're over your time, though. All right. Yeah. The New Mexico Supreme Court in Smith v. Brico Arms, we cited this case, 131 NM 887, dealt with a magazine safety issue, as there should have been a magazine safety. So on a semi-automatic, when the magazine's out, you shouldn't be able to shoot the gun. It's very similar. And what they said is, we perceive nothing new or unusual in these theories of defect. They present straightforward assertions that the handgun could have and therefore should have incorporated long-known design features which would have helped prevent this shooting and others like it. The fact that handguns are meant to fire projectiles, which can cause great harm, is to our view all the more reason to allow the court system to assess whether the product is reasonably designed to prevent or help avoid unintended, but careless firing such as occurred here. To wit, a small boy going to load a gun to protect his sister from bears and shooting her accidentally and she ends up with a paraplegic. Is that the case? The case is? Get to the microphone, please. Actually, it's not the one. I'll file a written pleading as to the case I'm referring about state of the art. Thank you for your indulgence for the extra time. I appreciate that. Thank you both for your argument. This matter will stand submitted.
judges: B Fletcher, Kleinfeld, Callahan, Cjj